FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA.

2020 FEB 20 P 2:57

CAROL L. MICHEL
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

# FELONY

INDICTMENT FOR
CONSPIRACY TO COMMIT HEALTH CARE FRAUD

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 20-28 |
| VERSUS | * | SECTION: SECT. T MAG. 1 |
| DARREN M. MARTIN | * | VIOLATIONS: 18 U.S.C. § 1349 |
| | | 18 U.S.C. § 1347 |
| | * | |

\* \* \*

The Grand Jury charges that:

## COUNT 1

## CONSPIRACY TO COMMIT HEALTH CARE FRAUD

A.  **AT ALL MATERIAL TIMES HEREIN**:

### The Blue Cross Blue Shield Program

1.  Blue Cross & Blue Shield, A Mutual Insurance Company ("Blue Cross") was a for-profit health and accident insurance company that provided health care benefits to member entities and individuals.

2.  Blue Cross was a "health care benefit program" within the meaning of Title 18, United States Code, Section 24(b).



X Fee USA
___ Process ___
X Dktd ___
___ CtRmDep ___
___ Doc. No. ___

3. Individuals who qualified for Blue Cross benefits were commonly referred to as "members."

4. Medical service providers, including hospitals, clinics, physicians, nurse practitioners, and pharmacies ("service providers"), meeting certain criteria, could provide medical services to members, and subsequently submit claims, either electronically or in hardcopy, to Blue Cross seeking reimbursement for the cost of services provided.

5. Blue Cross provided prescription drug coverage, including prescription coverage for compounded medications, to eligible members through their pharmacy programs.

6. Compounded medications were drugs that were combined, mixed, or altered from other drugs by licensed pharmacists or other licensed practitioners, pursuant to valid prescriptions issued by licensed medical professionals, including physicians ("prescribers"), to meet the specific needs of individual patients.

7. Prescribers, including licensed physicians, could prescribe compounded medications to patients upon consideration of patients' diagnoses, medical conditions, health factors, and reactions to other medications, and only after determining that commercially available medications were not as beneficial or potentially inappropriate or harmful to patients.

8. For prescription drugs, including compounded medications, to be appropriately reimbursed, Blue Cross required that these drugs be dispensed pursuant to valid prescriptions and be medically necessary for the treatment of covered illnesses.

9. Blue Cross reimbursed pharmacies dispensing compounded medications based upon the average wholesale price of the individual ingredients contained within the compounded medications.

10. Additionally, to prevent fraud, waste, and abuse, Blue Cross required service providers, including pharmacies, to collect copayments from members prior to or soon after the service or item is provided. This copayment requirement was a way to ensure that members needed the item or service provided, or, in other words, that the item or service was medically necessary. Consistent copayment collection was a fraud prevention measure, as copayments gave members financial incentives to reject medications that were not medically necessary or had little to no value to members' treatments.

11. Blue Cross's pharmacy program was administered by CVS Caremark, a pharmacy benefit manager ("PBM"). CVS Caremark's responsibilities included adjudicating and processing payment for prescription drug claims submitted by eligible pharmacies. CVS Caremark also audited participating pharmacies to ensure compliance with their rules and regulations.

12. Providers, including pharmacies, entered into contractual relationships with PBMs, including CVS Caremark, either directly or indirectly. By contracting with PBMs, providers agreed to comply with all applicable laws, rules, and regulations, including all applicable federal and state anti-kickback laws.

13. CVS Caremark required participating pharmacies to collect and make good faith efforts to collect copayments from members at the time of billing, and specified that copayments could not be systematically waived or reduced.

### The Defendant and Relevant Entities

14. The defendant, **DARREN M. MARTIN**, of Madisonville, Louisiana was a pharmacist licensed in the State of Louisiana who owned and served as president of Willow Pharmacy, Inc. ("Willow").

3

15. Willow was located at 1519 Highway 22 in Madisonville Center, Suite 5 in Madisonville, Louisiana 70447. Between 2012 and 2015, Willow operated as a closed-door pharmacy that was in the business of mixing and filling prescriptions for compounded medications that were reimbursed by health care benefit programs, including Blue Cross.

16. Affordable Medication Solutions, LLC, ("AMS") formed in or around March 2014, was a Louisiana Limited Liability Company domiciled at 3602 Cypress Street, West Monroe, Louisiana.

17. Joseph L. Wiley, II, of Monroe, Louisiana, was a member, manager, and registered agent of AMS. Wiley, through AMS, created a platform through which pharmacies, including compounding pharmacies, could apply or credit a manufacturer's coupon towards the amount of a member's copayment. AMS would serve as a prescription benefit administrator to adjudicate the copayment portion of the cost of a prescription, reflecting the application of the manufacturer's coupon amount towards the copayment.

18. Attorney A was licensed to practice in the State of New York who represented Willow and **MARTIN** in 2014 and 2015.

### B. THE CONSPIRACY TO COMMIT HEALTH CARE FRAUD

Beginning in or around June 2014, and continuing through in or around June 2015, in the Eastern District of Louisiana, and elsewhere, the defendant, **DARREN M. MARTIN**, did knowingly and willfully, that is, with the intent to further the object of the conspiracy, combine, conspire, confederate, and agree with Jay Wiley and other persons known and unknown to the Grand Jury, to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, that is, as defined in Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and

promises, money and property owned by, and under the custody and control of such health care benefit program, in connection with the delivery of and payment for health care benefits, items and services, in violation of Title 18, United States Code, Section 1347.

### C. PURPOSE OF THE CONSPIRACY

It was a purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by, among other things, (a) submitting and causing the submission of claims to CVS Caremark for compounded medications that were filled without the requisite corresponding collection of a copayment; and (b) concealing the fact that the requisite copayments were not collected in connection with claims for compounded medications.

### D. MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendant and his co-conspirator sought to accomplish the scheme included, among others, the following:

1. On or about September 27, 2012, **MARTIN**, on behalf of Willow, executed a provider agreement with CVS as the PBM for Blue Cross. As part of that agreement, Willow agreed to collect copayments from members and further agreed that it would not waive a copayment unless authorized by CVS.

2. In or around June 2014, CVS notified Willow that it was the subject of an audit for certain claims for compounded medications dispensed by Willow between June 10, 2013 and May 30, 2014 that were billed to Blue Cross.

3. To conceal the fact that Willow had not collected copayments in connection with prescriptions for compounded medications, in or around June 2014, Willow, through **MARTIN**, contracted with Wiley and his company, AMS, to assist with making it appear that Willow

collected copayments associated with dispensed compounded medications through the use of a secondary payer.

4. On or about October 17, 2014, CVS notified Willow that it had completed its audit. The audit concluded that Willow had claims totaling $567,710.39 for 110 prescriptions that were discrepant because Willow did not provide evidence that it had collected copayments associated with those 110 prescriptions.

5. On or about December 5, 2014, **MARTIN** caused to be sent to Wiley a list of 19 claims for 17 specific prescriptions for compounded medications dispensed by Willow that were at issue in the CVS audit.

6. On or about February 11, 2015, CVS notified Willow that it had until February 27, 2015 to provide a response to the audit's conclusions before those findings were submitted to CVS's Pharmacy Membership Review Committee, which would decide whether to terminate Willow's provider agreement based on the audit's findings.

7. On February 26, 2015, Attorney A, on behalf of Willow, sent CVS a letter indicating that Willow had collected copayments for certain of the 110 prescriptions at issue in the CVS audit and used AMS in its copayment collection efforts. Attorney A included with this letter an accounting purportedly demonstrating that Willow had collected copayments for the 19 claims for compounded medications that **MARTIN** had previously discussed with Wiley in December 2014.

8. To conceal from CVS the fact that Willow had never collected copayments for these 19 claims, on February 27, 2015, Wiley emailed **MARTIN** photocopies of backdated checks purportedly paid by AMS to Willow and remittance advices for these 19 claims to make it appear as though the copayments for the 19 claims had been paid.

9. On or about May 27, 2015, CVS sent Willow a letter requesting additional information about how Willow used AMS to collect copayments.

10. On or about June 9, 2015, **MARTIN** forwarded the May 27, 2015 letter to Wiley who responded inquiring whether **MARTIN** sent CVS the false remittance advices for the 19 claims. **MARTIN** responded to Wiley that Attorney A did not send the false remittance advices to CVS.

11. To conceal from CVS the fact that Willow had not collected copayments for these 19 claims, on or about June 9, 2015, **MARTIN** requested the false remittance advices from Wiley.

12. On or about June 15, 2015, Attorney A, on behalf of Willow responded to CVS in a letter stating that AMS collected copayments for compounded medications that Willow dispensed.

13. The June 15, 2015 letter falsely stated that Willow billed AMS for copayments and that AMS submitted payments directly to Willow via checks that were accompanied by remittance advices detailing each specific prescription for which AMS purportedly collected a copayment. The June 15, 2015 letter omitted **MARTIN's** understanding that AMS never paid Willow for any copayments and that Willow's statements to that effect were false.

All in violation of Title 18, United States Code, Section 1349.

## NOTICE OF HEALTH CARE FRAUD FORFEITURE

1. The allegations contained in Count 1 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture to the United States pursuant to the provisions of Title 18, United States Code, Section 982(a)(7).

2. As a result of the offense alleged in Count 1, the defendant **DARREN M. MARTIN** shall forfeit to the United States, pursuant to Title 18, United States Code, Section

982(a)(7), any and all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense as a result of a violation of Title 18, United States Code, Section 1349, which is a Federal health care offense within the meaning of Title 18, United States Code, Section 24.

3. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. Section 982(b) to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

All in violation of Title 18, United States Code, Section 982(a)(7).

A TRUE BILL:

███████████████████

MICHAEL M. SIMPSON
ATTORNEY FOR THE UNITED STATES
Acting under the Authority Conferred
By 28 U.S.C. § 515

*[signature]*

JARED L. HASTEN
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice

*[signature]*

KATHRYN MCHUGH
Assistant United States Attorney
United States Attorney's Office
Eastern District of Louisiana


New Orleans, Louisiana
February 20, 2020

FORM OBD-34

No. _____

# UNITED STATES DISTRICT COURT
Eastern District of Louisiana
Criminal Division

## THE UNITED STATES OF AMERICA

vs.

## DARREN M. MARTIN

## INDICTMENT
### FOR CONSPIRACY TO COMMIT HEALTH CARE FRAUD

VIOLATION:

18 U.S.C. § 1349
18 U.S.C. § 1347

Filed in open court this _____ day of _____ A.D. 2020.

_____ Clerk

Bail, $ _____

JARED L. HASTEN/KATHRYN MCHUGH
Trial Attorney/Assistant United States Attorney