UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 20-28 |
| v. | * | SECTION: "T" |
| DARREN M. MARTIN | * | |

\* \* \*

### FACTUAL BASIS

The defendant, **DARREN M. MARTIN** (hereinafter, the "defendant" or "**MARTIN**"), has agreed to enter a plea of guilty pursuant to a plea agreement. **MARTIN** has agreed to plead guilty to conspiracy to commit health care fraud in violation of Title 18, United States Code, Sections 1349 and 1347 as charged in Count One of the Indictment.

Should this matter have proceeded to trial, to which the defendant stipulates, the Government would have proven, through the introduction of credible testimony from witnesses and from the Special Agents and forensic examiners from the Federal Bureau of Investigation and Defense Criminal Investigative Services and admissible, tangible exhibits, the following facts, beyond a reasonable doubt, to support the allegations in the Indictment now pending against the defendant. Both the Government and the defendant do hereby stipulate and agree that the following facts set forth a sufficient factual basis for the crimes to which the defendant is pleading guilty. Unless stated otherwise, the following acts occurred within the jurisdiction of the Eastern District of Louisiana.

**MARTIN** was a licensed pharmacist in the State of Louisiana who owned and operated

AUSA/DOJ Trial Attorney _KM_
Defendant _DM_
Defense Counsel _CPr_

Willow Pharmacy, Inc. ("Willow"), a closed-door, retail pharmacy located in Madisonville, Louisiana. Between 2012 and 2015, Willow operated as a compounding pharmacy and filled prescriptions for compounded medications that it received from medical providers across the country. On September 27, 2012, Willow entered into a provider agreement with CVS Caremark ("CVS"), a pharmacy benefit manager for several health care benefit programs, including Blue Cross Blue Shield, which adjudicated claims for prescription medications covered by the various health care benefit programs and dispensed by various pharmacies, including Willow. As part of that provider agreement, Willow agreed to collect, or not waive or systematically reduce, copayments from individuals receiving a covered item ("members"), such as a compounded medication, for which reimbursement was sought from CVS.

Many compounded medications dispensed by Willow were expensive, and, accordingly, the attendant copayment associated with each prescription ranged from approximately $86 to $3,500 per prescription. Beginning in 2012 and continuing through 2015, due to the high amounts of these copayments, Willow did not collect the required copayments, at all or in their entirety, from some members despite it being a precondition to seeking reimbursement from CVS, as detailed in the CVS provider agreement.

In June 2014, CVS notified Willow that it was conducting an audit of certain prescriptions for compounded medications that were dispensed by Willow and for which Willow sought reimbursement from CVS. Moreover, as part of that audit, CVS requested information substantiating that Willow had collected copayments from members who received compounded medications dispensed from the pharmacy. That same month, **MARTIN**, on behalf of Willow, contracted with Jay Wiley ("Wiley") and his company Affordable Medication Solutions, LLC

2

DOJ Trial Attorney _KM_
Defendant _DM_
Defense Counsel _CM_

("AMS") for AMS to act as a copayment sponsor through a purported coupon sponsorship program.

In October 2014, CVS notified Willow that it concluded its audit and found that Willow failed to substantiate the collection of copayments for 110 prescriptions for compounded medications dispensed by the pharmacy. On December 5, 2014, **MARTIN** emailed Wiley about the results of the CVS audit. That same day, Wiley responded to **MARTIN**'s email and included a blank spreadsheet and further requested that **MARTIN** fill out the spreadsheet "for claims that were sent through AMS['s] program and send it to me." That same day, **MARTIN** had a Willow employee fill out the spreadsheet with information for 19 claims from 17 prescriptions and sent the information back to Wiley. The prescription numbers for these 17 prescriptions were 112968, 112753, 112752, 70010928, 114036, 70010903, 70010705, 70010595, 70004229, 70010372, 114120, 70010691, 70010774, 70009780, 104788, 112855, and 70010930. All of these claims were at issue in the CVS audit. The spreadsheet indicated that the AMS coupon amount would cover all but $15 for the copayments at issue for the 19 claims associated with these 17 prescriptions ("the Spreadsheet"). In actuality, AMS had not paid the copayments for any of these claims directly or through its coupon assistance program.

On February 26, 2015, Willow's counsel, Attorney A, responded to CVS via letter with a packet of materials attempting to show that Willow was compliant with the provider agreement and was collecting copayments for the claims at issue. Attorney A stated in the letter that co-payment collection was ongoing and included in this packet the Spreadsheet, which reflected that AMS's coupon assistance program was obligated to pay approximately $18,370 in copayments for the 19 claims reflected in the Spreadsheet. As of the date of Attorney A's letter, AMS had not

3

DOJ Trial Attorney _KM_
Defendant _DM_
Defense Counsel _CDM_

paid Willow any amounts for the copayments for these 19 claims.

Furthermore, on February 27, 2015, Wiley emailed **MARTIN** photocopies of three checks and three remittance advices for these 19 claims. The photocopies of the checks were issued to Willow from AMS in the amount of the copayments due on these 19 claims. The remittance advices falsely reflected that AMS had paid Willow the copayments for these claims ("False Remittance Advices"). In actuality, these checks were fraudulent, had never been issued by AMS, and were thus never cashed by Willow. Although these False Remittance Advices and checks were never submitted to CVS, **MARTIN** agrees that when he received this false documentation from Wiley on February 27, 2015, he knew that AMS would not perform its contractual obligation to assist with co-payments. Even though **MARTIN** knew on February 27, 2015 that AMS never collected copayments for these 19 claims, at no time did he ever inform CVS that Willow's prior representation that AMS would assist with copayments for these claims was false.

On June 9, 2015, after CVS contacted Willow again requesting information substantiating how AMS paid copayments for the compounded medications at issue in the CVS audit, MARTIN emailed Wiley and asked him to "answer any and all questions that pertain to Affordable Medical Solutions [AMS]." In response, Wiley responded: "I assume this is from the audit from February. Is that correct? Did Willow ever send in the Remittance Advices and check copies we sent to you? I understand that Richard was hesitant to do so and I notice that is one of the things they want to see." **MARTIN** replied to Wiley by email and asked Wiley to send to him the False Remittance Advices and checks. Although Willow never submitted the falsified checks and False Remittance Advices that Wiley provided **MARTIN** to CVS, Willow, through its attorney, continued to make false statements to CVS about AMS's collection of copayments for Willow. In a letter dated June

4

DOJ Trial Attorney **KM**
Defendant **DM**
Defense Counsel **CPM**

15, 2015, Attorney A again represented to CVS that AMS paid Willow for copayments by check accompanied by a remittance advice. Nowhere in this letter did Willow advise CVS that Wiley had falsified checks and remittance advices to make it appear as though Willow had collected copayments. Nor did Willow correct its earlier false statement in its February 26, 2015 letter to CVS falsely stating that AMS was assisting with copayments for the 19 claims for prescription numbers 112968, 112753, 112752, 70010928, 114036, 70010903, 70010705, 70010595, 70004229, 70010372, 114120, 70010691, 70010774, 70009780, 104788, 112855, and 70010930.

In total, Willow billed CVS $91,915.88 for these 19 claims, which is the loss amount in this matter. As a result of Willow's failure to prove to CVS that it had collected copayments for expensive compounded medications, CVS terminated its provider agreement with Willow. In sum, the evidence would establish that **MARTIN** conspired with Wiley and others to commit health care fraud by making false statements to CVS that Willow had collected copayments for the 19 claims at issue, when it had not done so, for the purpose of defrauding CVS of the associated reimbursement amounts.

### Limited Nature of Factual Basis

This proffer of evidence is not intended to constitute a complete statement of all facts known by **MARTIN**, and/or the Government. Rather, it is a minimum statement of facts intended to prove the necessary factual predicate for his guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for the plea of guilty to the charged offense by **MARTIN**.

The above facts come from an investigation conducted by, and would be proven at trial by credible testimony from, *inter alia*, Special Agents and forensic examiners from the Federal

5

DOJ Trial Attorney KM
Defendant DM
Defense Counsel CPN

Bureau of Investigation (FBI) and the Defense Criminal Investigative Services (DCIS), and admissible tangible exhibits in the custody of the FBI and DCIS.

DOJ Trial Attorney  *KM*
Defendant  *JM*
Defense Counsel  *CPM*

READ AND APPROVED:

_____
DARREN M. MARTIN
Defendant

_____
WALTER F. BECKER, JR.
Counsel for Defendant

_____
CHARLES D. MARSHALL
Counsel for Defendant

_____
KATHRYN MCHUGH
Assistant United States Attorney